Gardiner, C. J.
Neither the act of 1787, regulating the buildings, streets, wharves and slips in the city of New-York, or that of 1801, with the same title, conferred the power to take lands for the purpose of altering streets; and the authority granted was consequently limited to those cases which did not require the exercise of the right of eminent domain. The assessments made by virtue of those statutes for sums expended for streets, &c., were to be imposed by commissioners, subject to the approval of the common council by whom they were appointed, and might “be sued for and recovered, in like manner as if the houses and lots assessed were mortgaged for the payment.” By the act of 1812, § 1, the authority to take lands for the purpose of enlarging, straightening, altering or otherwise improving the streets of the city was granted to the common council; the commissioners of assessment to be appointed and their proceedings to be supervised and approved by the supreme court. The laws above mentioned were in force in 1813, when “the act to reduce the several law's relating particularly to the city of New-York into one act” was enacted. (2 R. L., 342, 433.) The provisions of the acts of 1787 and 1801, so far as they relate to streets unconnected with wharves, were embodied .in the law of 1813, under the head “of paving and regulating streets, &c;” and the provisions of the act- of 1812, upon the same subject, under the head “ of opening and laying out streets, &c.” The remedies given by the act of 1813, for the collection of the assessments for “ paving, and regulating, and the opening of streets,” by those sections found under those captions respectively, are: First, that the assessment is declared a lien upon the lots benefited. Second, it may be enforced by distress and sale of the goods of the owners and occupants, who are made liable for its payment; and in case of opening streets, an action of debt or assumpsit could be maintained for its recovery. (§§ 175, 186.)
With this general reference to the law of 1813, and to *144 some of the statutes existing at the time of its passage, we proceed to the consideration of the 223d section of that act, upon the construction of which depends the whole question in controversy. This section is found under the caption “ of wharves, piers and slips.” (2 R. L., p. 431.) By section 219, under the same- heading, the common council are authorized to take lands for wharves and slips, and to assess the damages by a jury to be summoned for that purpose ; by section 221, they have power to lay out streets and wharves, according to the plan previously sanctioned, along the East and Hudson rivers, which are to be made by the proprietors of lands nearest and opposite to said streets or wharves, and, in case of their neglect or refusal, by the corporation of the city, who may levy the sums expended (if not paid) with interest and costs by distress and sale of the goods of the proprietors, or recover the same by action of debt. Then follows section 223, which provides, “ that the said sums so to be expended, and every sum which hath heretofore been assessed among the owners and occupants of any houses or lots in said city, by virtue of the act for regulating the buildings, streets, wharves and slips in the city of New-York, passed April 16, 1787, or by virtue of the act with the same title, passed April 3, 1801, and not refunded, or shall hereafter be assessed by virtue of this act, shall be a lien or charge upon the houses and lots in respect to which such assessments shall have been made, and shall be on interest until paid; and shall be entitled to a preference before all other incumbrances on the same; and may be sued for and recovered with costs, in like manner as if said houses and lots were mortgaged to the corporation for the payment thereof.” The first clause of the section, “ that the said sums so to be expended,” obviously refers to the expenses which might be incurred by virtue of the -sections immediately preceding, and which embrace wharves, piers, slips and the streets connected with them to be constructed, or *145 extended upon the Hudson and East rivers. The second clause relates to a new subject, and includes “ every sum” theretofore assessed by virtue of the acts of 1787 and 1801. The third clause, “ or shall hereafter be assessed by virtue of this act,” comprehends in terms, and we think according to its import, all assessments authorized by the law of 1813 for similar objects. These objects, as will be seen by reference to previous acts, were wharves, piers, slips and the streets of the city; all of which were subjects of legislation, embraced in the statutes of 1787 and 1801. It is true that the act of 1812 conferred a new power, which was continued by the law of 1813, under the head' “ of opening and laying out streets ;” but one purpose of the grant was to enable the corporation to effect the alterations authorized by previous statutes, by appropriating the lands necessary to effect that object. These various laws in reference to a common subject were in pari materia; and as the expenses incurred under each of'them for the particular improvement were to be assessed and made a lien upon the real estate cf the owners benefited, there was no reason, w'hen they were consolidated, why the remedies for the', collection of the sums thus assessed should not be uniform ; and that the charge by way of mortgage, given to secure the disbursements for the alteration of a street under the acts of ’87 and 1801, should not, in the law of 1813, be extended to assessments for lands necessarily appropriated to accomplish the same purpose. It is said that the heading is a legislative declaration of the subject to which the sections that immediately follow must be considered to relate. The answer to this suggestion has been anticipated. The second clause of the 223d section, in terms as distinct as our language affords, refers to “ every sum which had been assessed by virtue of the acts of 1787 and 1801.” The laws last mentioned embraced not only wharves, piers, slips and the streets formed by them, subjects to which the preceding caption refers, but also the paving, altering and *146 amending streets, particulars included in the act of 1813, under a distinct heading. And yet provision for past assessments, for all these various purposes indiscriminately, is made in the second clause; while prospective assessments, on account of the subjects included under the particular caption, are specifically provided for in the first clause of the same section. If, therefore, the hypothesis under consideration is correct, since all assessments, past and future, for purposes mentioned in the heading, are provided for in the first and second clauses, it follows that the language of the third clause, including “all sums hereafter to be assessed by virtue of this act,” would be mere surplusage.
It may be conceded that regard should be had to the headings in this act, which were adopted as a matter of convenience in the compilation. But they can claim no more respect than we are accustomed to yield to the fonnal title of a statute. Now, it is notorious that the discrepancy between the headings and subjects of our laws was so frequent, that a constitutional provision was deemed necessary to guard against imposition upon a class of legislators whose knowledge of bills was supposed to be gathered principally from the title. Again, it was not the design of the legislature that the provisions under the respective captions should each form a complete system. ’For example, the authority to sell lands for assessments, which the appellant insists was the appropriate remedy in. this case, is not found under the head “ of paving and regulating streets,” or that of opening and laying them out, but in section 459, under a distinct caption. In a word, the act of 1813, though compiled from a large number of statutes relative to the city of New-York, was intended to supersede them, and to form a-system of regulations capable of being interpreted and administered in most instances without reference to previous enactments. In effecting this object, it was natural that subjects between which there was only a specific difference should be grouped under appro *147 priate headings, while provisions which, in the existing laws appertained to a particular species, should, in the revision and compilation, be made applicable to a class embracing them all, for the purpose of securing uniformity. This I think has been done; and we are to construe the 223d section of the act of 1813, in reference to the case before us, as though the laws of 1787 and 1801 as to the regulation and alteration of streets, and that of 1812 in reference to their opening and alteration, had been included in a single statute. If in the case supposed the legislature had declared in the language of that section, “that all sums that shall hereafter be assessed by virtue of this act” shall be a lien and incumbrance, in like manner as if the houses and lots had been mortgaged to the corporation,” no doubt would be entertained that all assessments for the alteration of a street, whatever the mode in which they were effected, would be included. The superior court was, therefore, correct in adjudging that the corporation had a right to this remedy.
(2d.) There is no force in the suggestion, that by the sale of the assessed premises, and the payment of the money by the purchaser, the debt was satisfied. The sale was one step in a series of proceedings, all of which were necessary to divest the appellant of the absolute ownership and control of his property, and to furnish the only consideration for which the purchaser advanced his money. In consequence of a misapprehension of the law, those proceedings were defective in an essential particular, and the sale, in consequence, became utterly void. The owner lost nothing, the purchaser gained nothing, and the corporation received nothing which they could legally retain. Such a result is anything but a satisfaction of a preexisting debt. If the corporation have lost their claim, it is a forfeiture incurred for misconstruing the law. But I do not understand that this penalty is inflicted in any case of a judicial or quasi judicial sale, where the creditor has acted *148 in good faith, and the debtor has sustained no injury. (People v. Hopson, 1 Denio, 574; Peck v. Tiffany, 2 Comst., 451.)
And finally, if the hen continued, and it has not as I think been discharged, it was in the nature of a judgment. The assessment and its confirmation were judicial acts, and the statute makes the sum thus found a lien upon the premises assessed, when the report is filed. The analogy is certainly strong between the two ; and as the legislature have not fixed the time when this incumbrance shall cease to bind the lands charged, it will work no injustice to the appellant, who has continued to be and is now the owner of the premises, to apply the limitation prescribed by the law to judgments to this lien also. The judgment of the superior court must be affirmed.
Denio, J.
The court below considered the sum assessed upon the defendant by the commissioners of estimate and assessment, whose report was confirmed on the 3d day of April, 1839, as a lien in the nature of a mortgage upon the lot of land in respect to which it was assessed; and the judgment appealed from consequently contains the usual provisions in a decree of foreclosure of a mortgage. The defendant maintains that the provision of law, giving to certain assessments in the city of New-York the effect of a mortgage lien, does not embrace this assessment; that if it should be held to embrace it, then that the lien was 1 extinguished by the sale of the lot and the payment of the purchase money to the corporation in October, 1841; and finally, if there were no other defence, that the plaintiffs are bound by the limitation of six years, which it is insisted is applicable to this demand.
(1.) The two hundred and twenty-third section of the statute entitled “An act to reduce several laws relating particularly to the city of New-York into one act,” passed April 9, 1813 (2 R. L., 433), contains the provision relied upon by the plain *149 tiffs. The four sections of the statute, which immediately precede this one, relate to the subject of wharves, piers and slips, and to certain exterior streets or wharves which the corporation was authorized to construct in front of the navigable waters by which the city is in part surrounded. As to wharves and slips, it is provided that the common council may take the ground of the individual citizens, for the purpose of constructing them; and if they cannot agree with the owner as to the compensation, the damage and recompense to which he is entitled are to be assessed by a jury to be impanneled in the mayor’s court. This money is not directed to be assessed upon any one, but, so far as it appears, is to be paid out of the city treasury. (§ 219.) The exterior streets or wharves referred to are to be constructed by and at the expense of the proprietors of the land opposite such streets, and where the lots of such proprietors do not extend quite to the streets, they are to fill up and level the intermediate spaces; and in default of their doing it, the corporation is to do it for them and charge them with the expense, which, if not paid by the proprietors in a given time, may be levied by distress and sale of the goods of the proprietors or occupants, or recovered against the proprietors in an action of debt. (§§ 220, 221, 222.) Then follows the section,- the construction of which is the subject of dispute. It declares “ that the said sums so to be expended on behalf of the proprietors, and every sum which hath heretofore been assessed among the owners or occupants of any houses and lots in the said city, by virtue of the act entitled ‘ An act for regulating the buildings, streets, wharves and slips in the city of New-York,’ passed the 16th of April, 1787, or by virtue of an act with the same title, passed the 3d day of April, 1801, and not repealed, or shall hereafter he assessed hy virtue of this act, shall be a lien or charge upon the'houses and lots in respect to which such assessments shall have been made, and shall bear lawful interest until *150 paid, and shall be entitled to a preference before all other incumbrances upon the same, and may be sued for and recovered with costs, in like manner as if the said houses and lots were mortgaged to the mayor, aldermen and commonalty for the payment thereof; provided always, that nothing herein contained shall extend to 'charge any such houses or lots which may have been bona fide sold and disposed of after the making of such assessment thereon, and before the 3d day of April, 1798.” (§ 223.) Immediately following this section are several provisions, extending through many sections, relating to piers, wharves and docks; but none of them authorize an assessment upon the lands of individuals. The directions of the common council upon these subjects are enforced by providing for the forfeiture of wharfage by the proprietors who shall neglect to comply with the orders of the corporation for the constructing of wharves and piers. ’ (§§ 224 to 236.) The whole of the several sections to which I have referred have prefixed to them, in the printed act, the words “ wharves, piers and slipsand throughout the act, the subjects of the various provisions are indicated by a similar running title, inserted in the body of the page immediately preceding the sections which treat upon the subjects indicated. The provisions of the statute, under which the assessment in question was imposed upon the defendant, are contained in an earlier part of the act, and are preceded by the words “ opening and laying out streets, &c.” (§§ 177 to 192.) Sections 259 and 260 are under the heading, “ collection of assessments.” They provide that assessments already made, or which shall thereafter be made, and which are liens upon lots belonging to individuals, may, if not paid on demand, be collected by a sale of the lots, to be made pursuant to an advertisement, for the shortest term of years at which any person shall offer to take the same and advance the amount of the assessment, with interest and costs. The defendant’s counsel insists that the *151 expression in the 223d section, declaring that the sums which shall thereafter be assessed by virtue of that act shall be equivalent to liens by mortgage, is limited t / such as shall be made under that portion of the act to which the section belongs, and which relates to wharves, ; ers and slips, and that assessments, such as the one in controversy, which arc reported by the commissioners of estimate and assessment, and confirmed by the supreme court, under the earlier sections referred to, are not within the purview of that provision, but are to be enforced by means of other provisions contained in the act, as altered and modified by subsequent statutes. (Laws 1816, p. 114, § 2; 1840, p. 273, §§ 9, 10; 1841, p. 211, §§ 3, 4, 5, 6, 9.) I am unable to assent to this position. In the first place, the language is broad enough to reach the class of assessments to which the one under consideration belongs. It is a sum assessed by virtue of that act, and the expression is not limited to any particular part of the act. The entitling of the different portions, if it was really a part of the act as it passed the legislature, and not, like the words in the margin, inserted by the printer for purposes of easy reference, is still of no weight in construing the statute. The title is not legally any part of the act, being usually appended after it has passed. It is not of any legislative import. (Dwarris on Statutes, pp. 322, 659, ed. 1848.) It is, therefore, impossible to maintain that when the provision referred to speaks of sums to be assessed “by virtue of this act,” it refers to the portion of the act under the heading which speaks of wharves, &c. But there are other insurmountable objections to thus restricting these words of reference. No assessments are to be made under that division of the act (if it may be so called) to which section 223 belongs. The expenses of constructing the exterior wharves and filling up the intermediate spaces, which the statute requires shall be collected of the proprietors of lots, are not called assessments, and there is no method prescribed for apportioning them which *152 can be properly termed an assessment. Besides, these expenses, which are the only charges upon the lands of individuals which are contained in this division of the act, are provided for in terms and by their proper designation in the 223d section. The “sums sd to be expended on behalf of the said proprietors,” form one class of the burthens which are to become liens in the nature of the mortgage, and are quite distinct from the sums to be “ hereafter assessed by virtue of this act.” It may be admitted that the assessments which have already been made by virtue of the statutes referred to in the 223d section, and which remained unpaid, were of a different kind and for somewhat different purposes from those to be made through the instrumentality of the 'commissioners and the supreme court, as provided by that act; but this only proves that the legislature intended to embrace different classes of public exactions in one provision, and to clothe them all with a common attribute. If the sum “tobe assessed by virtue of this act” does not embrace the assessment in question, it would be difficult to maintain that it has any effect, for if it does not refer to this class of assessments there is none upon which it can have any operation. I do not feel any difficulty from the circumstance that other remedies for the collection of these assessments are given by the act of 1813 and by subsequent legislation. It was of great public importance that efficient means should be provided by which the public might realize the sums assessed. Thus, the assessments had been made a lien upon the lots, and the remedy by distress and sale and by action of debt had been provided by a prior section (187), and subsequent provisions, as before remarked, provided for a sale for a term of years. But a case might exist where none of these remedies would be exactly adapted to the case. Both the owner and occupant might be without personal property, and purchasers under an ex parte sale are proverbially unsafe. By providing a lien in the nature of a mortgage, the party assessed might be called into court *153 to show, if he could, that the proceedings were irregular, and the purchaser, under a bill of foreclosure, would have the protection of a judgment of the court affirming the legality of the lien. It is urged on behalf of the defendant, that the words houses and lots, which occur in the 223d section, are used to denote a class of assessments in which the burthen is in terms thrown upon property thus designated, and that the assessment in question being imposed nominally upon property described as land, tenements and hereditaments (see §§ 175 and 186), is not em. braced in the provision in which houses and lots are alone spoken of as the subject of the mortgage lien. It was clearly unnecessary to use the term houses, in order to embrace all the dwellings upon -a lot; and besides, the-terms houses and lots would be taken distributively, if the subjects represented by the words were separable. The revised act of 1813 was a consolidation of a great number of separate statutes passed at different times, and necessarily the work of different draftsmen, who had, at times, used different words to express the same idea. For instance, the assessments for paving and regulating streets, which are authorized by several separate acts and parts of acts, and which are consolidated in sections 175 and 176 of the act of 1813, are to be made among the owners or occupants of all the houses and lots intended to be benefited thereby (see Laws 1801, ch. 129, § 11; Laws 1798, ch. 80, pp. 459, 462); but the acts authorizing the taking of land for streets and assessing the benefit upon the proprietors of adjacent lands, use the phraseology lands, tenements and hereditaments, as in those parts of the act of 1813 already referred to. (See Laws of 1807, ch. 115, p. 275; Laws 1812, p. 350, §§ 2, 10.) It is obvious to my mind that no difference was supposed to exist between the subjects to bo assessed in both cases, and that the diversity of language is accidental merely, arising out of the circumstances which I have mentioned. It if by no means certain that the qualification intended by the *154 words “ among the houses or occupants of any houses .r lots,” as used in the. 223d section, applies to the sums “hereafter to be assessed by virtue of this act,” subsequently occurring. The more natural construction would be to consider the first mentioned words as applying only to the assessments made by virtue of the two acts referred to in the section. I am satisfied, for these reasons, that the remedy referred to is a cumulative provision provided for this case, in addition to the other modes of collecting the assessment furbished by the statute.
(2.) I am of opinion that the lien was not extinguished by ihe sale of the premises for a term of years, which took place in 1841. Should it be admitted that the statement in the conditions of sale, to the effect that if irregularities were discovered which should prevent the sale from being effectual the purchase money and interest should be returned, was unauthorized by law, it would not aid the defendant. It would perhaps prove that the sale was illegal. But having made such a proposal to the purchaser, and it turning out that by reason of a formal defect the sale had -become inoperative, returning the money was only fulfilling the bargain which had been made. The whole proceeding authorized by the acts of 1813, 1816, 1840 and 1841 was necessary to be gone through with, in order to divest the title of the person assessed and to confer title upon the purchaser. Until the last step had been taken, nothing had been done to disturb the owner in his possession or his title, and before that step was had the inchoate proceeding was abandoned with the consent of the purchaser, and pursuant to one of the terms upon which the property was offered for sale. The proceeding thus became void from the beginning. Although the corporation at one time had the purchaser’s money in their hands to the amount of the assessment, it was a conditional and not an absolute payment; and though, until default was made in perfecting the title, the remedy for the assessment was probably suspended, it was never *155 extinguished. It was urged that it was the fault of the corporation that the sale was not made effectual, and that by insisting on the continuance of the lien it is seeking an advantage growing out of its own fault. It should be remembered, however, that the functionaries, whose duty it was to have published the notice of redemption, acted upon this subject as public officers, and that their delinquency in this particular is of the same character as the neglect of a sheriff or other executive officer in enforcing process at the suit of an individual. Such a neglect, where there is no question of jurisdiction, and where the party proceeded against has not suffered any injury, does not ordinarily prejudice the right of the creditor or prevent his proceeding anew against the debtor. A levy of personal property under an execution, of sufficient amount to satisfy the judgment, is prima facie an extinguishment of it; but if through the fault of the sheriff the levy is abandoned and the debtor is suffered to remain in possession, a further execution may be levied. (Peck v. Tiffany, 2 Comst., 451.). To amount to a satisfaction, the debtor must have been deprived of his property. In this case, the defendant has not been deprived of any valuable thing even for a moment, and the city has not received any beneficial payment. The lien created by the assessment remained in force therefore when this suit was commenced.
(3.) The statute of limitations relied on, is that contained in the Revised Statutes, by which it is declared that “ all actions of debt founded upon any contract, obligation or liability, not under seal, excepting such as are brought upon the judgments or. decrees of some court of record of the United States, or of this or some other state,” shall be commenced within six years next after the cause of such action accrued, and not after. (2 R. S., 296, § 18, subd. 1.) There is a difficulty in holding this assessment to be a judgment of a court of record; for, although the supreme court acted in the matter by making an order confirming the report of the commis *156 sioners, it was not, I conceive, by virtue of its general powers as a court of record, but in the execution of a special and limited jurisdiction conferred by the statute. It certainly was not a judgment in the popular or in the legal sense of that term. No profcess of the court could be awarded for its enforcement. It is rather a statutory method of creating a lien upon property than a judgment. But I am of opinion that the assessment is to be considered as, in effect, a mortgage, as well in regard to the time of commencing an action upon it as in other respects. The statute declares that the sum assessed may be sued for and recovered with costs, “ in like manner as if the said houses and lots were mortgaged” to the corporation for the payment thereof. If the premises had been mortgaged in the ordinary manner for this assessment, there would be no law of limitation applicable to it, except the presumption of payment, which would not attach until after the expiration of twenty years. (2 R. S., 301, § 48; Heyer v. Pruyn, 7 Paige, 465.)
The result of the foregoing positions, if they are correctly laid down, is, that the judgment of the superior court was right and should be affirmed.
Judgment affirmed.